Vincent M. Rizzo - #6313833
Todd P. Stelter - *admitted pro hac vice*
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone No.: 312-704-3000
Fax No. 312-704-3001
vrizzo@hinshawlaw.com
tstelter@hinshawlaw.com

Attorneys for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SMITH and LYLY TRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDWEST TAPE, LLC d/b/a HOOPLA,<br><br>Defendant. | Case No. 3:24-cv-08805-JD<br><br>**DEFENDANT MIDWEST TAPE, LLC D/B/A HOOPLA'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Complaint Filed:  December 6, 2024<br>Am. Complaint Filed: March 18, 2025<br>Trial Date:  December 14, 2026 |

## I.    INTRODUCTION

Plaintiff Smith[1] does not contest that he agreed to the Terms and Conditions of Use ("TOU") which contained an arbitration provision and a class action waiver. *See* ECF No. 35. While plaintiff spends an inordinate amount of time arguing that California law regarding unconscionability should be applied here instead of the Federal Arbitration Act ("FAA"), ECF No. 35 at Section I, it ultimately does not matter. Plaintiff has still conceded that he agreed to the TOU which contained an arbitration

---

[1] Plaintiffs filed a First Amended Complaint ("FAC") on March 18, 2025. ECF No. 33. The FAC purports to add a new plaintiff, Lyly Tran. *Id*. Defendant is in the process of preparing a second motion to compel arbitration addressing Tran's claims because, like plaintiff Smith, Tran also agreed to the TOU containing an arbitration clause and class action waiver. As established in defendant's motion to compel arbitration, all users must register and agree to the TOU in order log on to the website and access content. *See* ECF No. 26 at ECF No. 26-1 ¶¶ 8-12.

provision and a class action waiver. Therefore, the existence of the arbitration agreement and the issue of contract formation have already been conclusively determined.

Plaintiff's sole remaining argument is that the arbitration agreement and class action waiver are unconscionable under California law. ECF No. 35 at Section II. However, because the TOU incorporates AAA rules, this Court does not even decide whether the arbitration agreement is unconscionable (under either the FAA or California law) because the law holds that the parties have agreed to delegate the issue to the arbitrator. *See Kasper v. NFHS Network, LLC*, 2024 U.S. Dist. LEXIS 211406, *5-6 (N.D. Cal. 2024) citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (stating "incorporation of the AAA rules constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability" and holding that "Kasper's unconscionability arguments about the arbitration agreement as a whole are for the arbitrator to decide."); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 239-50 (2014) (finding that under California law the trial court lacked the authority to rule on whether the arbitration agreement was unconscionable after the parties' had delegated this authority to the arbitrator and holding that "the applicability of the [FAA] is immaterial" to this issue.)

Notably, plaintiff here does not argue that the <u>delegation clause</u> itself is unconscionable. Rather, plaintiff is arguing that the arbitration agreement as a whole is unconscionable. Therefore, this Court should follow its decision in *Kasper* (which holds that this argument is for the arbitrator not the Court) and grant defendant's motion.

## II.    ARGUMENT

### A.    The Parties Have Agreed to Delegate to the Arbitrator Whether the Agreement as a Whole is Unconscionable and the Applicability of the FAA is Immaterial to this Determination.

The TOU here incorporates AAA rules. It expressly states:

The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

ECF No. 26-1 at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

Arbitration clauses may delegate to the arbitrator, for determination in the arbitration, certain threshold issues about the agreement. *Fli-lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024). These delegation provisions are simply "agreement[s] to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Cntr, W., Inc. v. Jackson,* 561 U.S. 63, 68 (2010). Such arbitrable threshold issues may include the controversy of "whether [the arbitration] [a]greement is unconscionable." *Fli-lo*, 97 F.4th at 1199 citing *Rent-A-Cntr*, 561 U.S. at 68. Once the court finds that the parties delegated such a determination to the arbitrator, it has "no power" to override that agreement, even if the party opposing arbitration claims the movant's arbitration rights are "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 68–69 (2019).

As this Court noted in *Kasper*, the Ninth Circuit in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate" the issue. *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *5-6. And, when that is the case, the only remaining question is whether the delegation provision itself is unconscionable. *Fli-lo*, 97 F.4th at 1199 citing *Brennan*, 796 F.3d at 1132. If a plaintiff fails to make any arguments specific to the delegation provision and instead argues that the arbitration clause as a whole is unconscionable under state law, the court may not consider that claim because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question. *Fli-lo* at 1199; *Brennan* at 1133.

Here, plaintiff's response fails to make any arguments specific to the delegation provision and instead argues that the arbitration clause as a whole is unconscionable under state law. ECF No. 35. Therefore, this Court need only follow *Rent-A-Cntr*, *Fli-*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*lo*, *Brennan* and *Kasper*[2] as they are all on point as to this issue. *See also In re Tesla Emp. Data Breach Litig.*, 2025 U.S. Dist. LEXIS 15330, \*7 (N.D. Cal. 2025) (holding that incorporation of JAMS arbitration rules was a clear and unmistakable agreement to delegate all arbitrability disputes to an arbitrator, and that if a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator.)

Plaintiff's response argues that the FAA does not apply and that California law should be applied instead to find the arbitration agreement unconscionable as a whole. ECF No. 35. However, plaintiff is wrong. *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 239-50 (2014). The same argument was made by the plaintiff in *Tiri*. *Id*. The court in *Tiri* concluded "that the FAA's applicability is immaterial because our decision in this case would be the same under either the FAA or the [California Arbitration Act]." *Tiri* at 239. The court held "[i]n most respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]; the similarity is not surprising, as the two share origins …" *Id*. at 239-40. "In similar language, both the FAA and the [California Arbitration Act] provide that predispute arbitration agreements are valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract." *Id*. at 40. "Thus, enforcing valid arbitration agreements is favored under both state and federal law." *Id*.

The court in *Tiri* also stated that "California courts often look to federal law when deciding arbitration issues under state law" and that "[t]hey have specifically looked to the FAA when considering delegation clauses and have long held that the rules governing these clauses are the same under both state and federal law." *Tiri* at 240 citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (2004) (collecting cases). Further, the court in *Tiri* held that "[a]lthough [*Rent-A-Cntr*] was decided under

---

[2] Notably, the *Kasper* case was a main focus of defendant's motion and the case was cited repeatedly throughout defendant's motion. ECF No. 26. However, plaintiff's response does not even bother to address *Kasper*. ECF No. 35.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-08805-JD

the FAA, we agree with [defendant] that its holding applies under the CAA as well." *Tiri* at 241. "Because section 1281 [part of the CAA] and 9 United States Code section 2, part of the FAA, are interpreted the same under controlling precedent, it makes no difference to the outcome of this case if one but not the other applies." *Id*. "Thus, we need not resolve the parties' dispute whether the agreement sufficiently affects interstate commerce to support the application of the FAA." *Id*.

The court in *Tiri* noted that "any claim of unconscionability must be *specific to the delegation clause*" (emphasis in original), *Tiri* at 244, and concluded that "it will be for the arbitrator to consider the conscionability of the agreement as a whole …" *Tiri* at 250. This is the same conclusion that the courts reached in *Rent-A-Cntr*, *Fli-lo*, *Brennan*, *In re Tesla Emp. Data Breach Litig*. and *Kasper*.

Here, again, plaintiff does not argue that the delegation clause itself is unconscionable. Rather, plaintiff is arguing that the arbitration agreement as a whole is unconscionable. Therefore, this Court should follow *Tiri* and grant defendant's motion.

**B.    Although It Is Immaterial, Should This Court Rule on the Issue, It Should Hold That the FAA Applies.**

As indicated above, this Court need not rule on whether the FAA applies here in order to grant defendant's motion. However, if for some reason it does take on that issue, it should rule that the FAA applies.

First, plaintiffs own recently filed FAC clearly alleges interstate commerce. The FAC alleges that defendant is "incorporated in Ohio and has its principal place of business in Holland, Ohio." ECF No. 33 ¶ 26. In the same paragraph, plaintiffs allege that defendant "owns and operates the digital library rental catalog and the digital distribution service that partners with libraries nationwide, found at hoopladigital.com (the 'Website')." *Id.* Later, plaintiffs allege that "Hoopla Digital 'partners with libraries around the United States to allow an account holder to '[i]nstantly borrow digital movies, music, ebooks, and more 24/7 with [their] library card.'" ECF No. 33 ¶ 44. Plaintiff alleges that "[d]efendant owns and operates the Website, which provides the

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-08805-JD

Hoopla Service and distributes digital reading and video materials to account holders across the entire United States." ECF No. 33 ¶ 46. Plaintiffs both allege that they accessed the Website while they were in California (rather than Ohio). ECF No. 33 ¶ 51.

Continuing on, plaintiffs' FAC notes that "[a]s of 2022, Hoopla Digital had partnered with more than 8,500 public libraries across the U.S., Canada, Australia and New Zealand. ECF No. 33 ¶ 47. Plaintiffs' FAC concludes by alleging that defendant "is a 'person providing video recording sales … services' because it sells access to its online [sic], which hosts and delivers thousands of videos on the Hoopla Service platform." ECF No. 33 ¶ 159.

Therefore, plaintiffs' own FAC allegations simply do not match plaintiffs' argument here. Plaintiffs' FAC clearly alleges interstate transactions and plaintiffs should be bound by their own FAC allegations.

Second, as is noted in plaintiff's response, ECF No. 35 at 15, the Ninth Circuit holds that use of the Internet generally constitutes engaging in interstate commerce. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). In *Sutcliffe*, the court held:

"The Internet is an international network of interconnected computers, [citing] *Reno v. ACLU*, 521 U.S. 844, 849 (1997), similar to--and often using--our national network of telephone lines, [citing] *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). We have previously agreed that '[i]t can not be questioned that the nation's vast network of telephone lines constitutes interstate commerce,'" [citing] *United States v. Holder*, 302 F. Supp. 296, 298 (D. Mont. 1969), *aff'd and adopted*, 427 F.2d 715 (9th Cir. 1970) (per curiam), "and, a fortiori, it seems clear that use of the internet is intimately related to interstate commerce. As we have noted, '[t]he Internet engenders a medium of communication that enables information to be quickly, conveniently, and inexpensively disseminated to hundreds of millions of individuals worldwide.' [citing] *United States v. Pirello*, 255 F.3d 728, 729 (9th Cir. 2001). It is 'comparable . . . to both a vast library including millions of readily available and indexed publications and a sprawling mall offering goods and services,' [citing] *ACLU*, 521 U.S. at 853, and is 'a valuable tool in today's commerce,' [citing] *Pirello*, 255 F.3d at 730. We are therefore in agreement with the Eighth Circuit's conclusion that "[a]s both the means to engage in commerce and the method by

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Case No. 3:24-cv-08805-JD

which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'" *Sutcliffe* at 952-53.

Again, clearly, plaintiffs' own FAC allegations plead interstate commerce here for the reasons stated by the Ninth Circuit in *Sutcliffe* and plaintiffs should be bound by their own allegations. This Court should follow *Sutcliffe*.

Third, plaintiffs statement, at ECF No. 35 at 10, that "[n]owhere in the Hoopla Terms does [d]efendant acknowledge the existence of any transaction – much less a commercial transaction –" is a mischaracterization. Plaintiffs' response goes on to quote language about how, under the TOU that plaintiffs agreed to, they were given the right to make only "non-commercial" use of the content available on the Website. ECF No. 35 at 10. However, plaintiffs are misinterpreting what is essentially a licensing transaction. By referencing "non-commercial use" plaintiffs actually are referencing "transactions" – i.e., the fact that, under the TOU, defendant grants users limited licenses to the content they borrow. The licenses involve borrowing content (from anywhere) via the Internet. The "non-commercial" use restriction is intended to establish that the license is limited, and that the plaintiffs are prohibited from selling the content, charging admission to view it, etc. anywhere in the United States. The licensing agreement is certainly not limited to California and such restraints therefore are commonly held to have direct nexus to interstate commerce. *See, e.g. Solar Planet Profit Corp. v. Hymer*, 2002 U.S. Dist. LEXIS 20148, \*7 (N.D. Cal. 2002) (licensing agreements that restrain have a direct nexus to interstate commerce, and regulation of such agreements fall within Congress's interstate commerce power). The fact that another person or entity (here, the library) pays for the user's use of the license does not render the transactions outside the scope of interstate commerce.

Fourth, plaintiffs cite to caselaw which simply does not involve a relevant or parallel determination or situation. ECF No. 35 at Section I. Plaintiffs seem to be trying to suggest overall that this Court should create a blanket rule that library type services do not involve interstate commerce. However, plaintiffs are vastly overreaching for this

conclusion. For instance, plaintiffs cite to *Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370 (S.D.N.Y. 2023) for the proposition that a "patron's private reading of an ebook provided by [the digital library service wa]s noncommercial." ECF No. 35 at 9. However, the actual full quote from *Hachette* states that "[i]t is 'largely irrelevant' that an IA patron's private reading of an ebook provided by IA is noncommercial." *Hachette* at 384. The full quote is vastly different from plaintiff's partial quote. In full context, the court in *Hachette* actually found that the described conduct was commercial. *See Hachette* at 384.

Further, just because a service may have elements of being "free" does not mean that it is noncommercial. Synagogues and monasteries have been held to be involved in interstate commerce. *See e.g. Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012) (church official's posting of religious texts on website was "commercial" because he "benefitted by being able to provide, free of cost, the core text of the [copyrighted] Works to members of [his] faith, and by standing to gain at least some recognition within [his] religious community for providing electronic access."); *United States v. Gillespie*, 452 F.3d 1183, 1188 (8th Cir. 2006) (holding that synagogue was involved in interstate commerce).

Similarly, in *United States v. Zajac*, 2008 U.S. Dist. LEXIS 32707, *5-6 (D. Utah 2008), the court compared library services to the synagogue in *Gillespie*:

"Like the synagogue, the library is also commercial in nature …
A substantial portion of the library's collection has moved in interstate commerce. The goods and services are available to the general public, including travelers from outside of the state. The Library also holds conferences and guests lecturers from outside the state. Considering the business housed at the library as well, the library has far more interstate connections and activity than a local church. *Zajac* at *6-8.

Therefore, plaintiffs are not advancing a compelling argument in their response. ECF No. 35 at Section I. All in all, defendant here is a for profit LLC and it is not operating solely in California. ECF No. 33 ¶ 26. Further, it is not providing its services

to people like plaintiffs over the Internet for free. Therefore, it is clearly involved in interstate commerce and the FAA should apply to its TOU.

**C.      Although It Is An Issue for the Arbitrator to Decide, Should This Court Rule on the Issue, It Should Hold That the Agreement is Not Unconscionable.**

Finally, the TOU is not unconscionable. Plaintiffs predominantly cite to *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) for this argument. ECF No. 35 at Section II. In *Heckman*, the Ninth Circuit affirmed a district court's decision finding a delegation clause unconscionable. *Id.* at 687. In doing so, the Ninth Circuit explained that a court applying California law can interpret the delegation clause in the context of the agreement as a whole. *Id.* at 681. But *Heckman* does not—and cannot—alter *Rent-A-Cntr's* requirement that parties must specifically challenge a delegation clause in order to advance this argument.[3] To the contrary, here plaintiffs' response brief does not even mention the TOU delegation clause. ECF No. 35. Therefore, plaintiffs here are attempting to make an argument that does not fit this situation at all. Here, this Court should treat the delegation provision as valid, as it did in *Kasper* (and *In re Tesla Emp. Data Breach Litig.*), leaving "any challenge to the validity of the agreement as a whole for the arbitrator." *Rent-A-Cntr*, 561 U.S. at 72.

Finally, as the party opposing arbitration, plaintiffs have the burden of to establish unconscionability. *Baghdasarian v. Macy's Inc.*, 2025 U.S. App. LEXIS 7838, *1-2 (9th Cir. 2025). For plaintiffs to successfully employ an unconscionability defense, the Court must also find some degree of both procedural and substantive unconscionability in the agreement at hand. *James v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 107905, *13 (N.D. Cal. 2016).

Here, the TOU is not unconscionable because there is no procedural unconscionability. Procedural unconscionability focuses on oppression and surprise.

---

[3] Indeed, the district court record in *Heckman* reflects that plaintiffs specifically challenged the relevant agreement's delegation  clause there. *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023) ("Plaintiffs' unconscionability arguments (particularly as articulated in their supplemental briefings) are directed at the delegation clause, as is required by *Rent-A-Cntr*.")

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-08805-JD

*James* at \*12-13. The key inquiry in establishing the existence of oppression is showing unequal bargaining power and lack of meaningful choice on the part of one party. *Id.* Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the form drafted by the party seeking to enforce the disputed terms. *Id.*

Here, plaintiffs have failed to establish oppression for several reasons. First, plaintiffs could opt out of the transaction at any time they wanted. The TOU states: "If you do not agree to or cannot comply with the Terms, do not install or use the Platform or any software …" ECF No. 26-1 at Ex. 1 at section "I. INTRODUCTION." Literally, nothing prevented plaintiffs from just opting out and either deleting the software and/or never installing it. So, while plaintiffs argue that the TOU was a contract of adhesion, the Ninth Circuit has found that there is no contract of adhesion when an individual is given the opportunity to opt-out. *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002). Certainly, defendant does not have a monopoly on books and movies nor access to them. This is in marked comparison to Ticketmaster, the defendant in *Heckman* that was the only avenue through which plaintiffs could obtain tickets. Thus, *Heckman* involved a "take-it-or-leave-it basis" while no such situation exists here. Here, plaintiffs do not suggest that they lacked alternatives.

There is also no surprise. The arbitration provision was not buried in the TOU nor hidden. Plaintiffs have not cited any California case which holds that a similar situation to here constitutes actionable surprise.

Finally, plaintiffs argue that the forum selection is void because it requires arbitration in Lucas County, Ohio. ECF No. 35 at 17-18. However, the forum selection clause is not so limited. It clearly allows that the "proceedings shall occur in Lucas County, Ohio, <u>unless the arbitrator determines that another, mutually convenient arbitration forum is required by applicable law</u>." ECF No. 26-1 at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION. Therefore, plaintiffs are citing an issue that does not exist.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Case No. 3:24-cv-08805-JD

## III.    CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its Motion to Compel Arbitration and exercise its discretion to refer these proceedings to arbitration.

Dated:  April 7, 2025                                    HINSHAW & CULBERTSON LLP

                                                        By: */s/Vincent M. Rizzo*
                                                            Vincent M. Rizzo
                                                            Attorney for Defendant
                                                            MIDWEST TAPE, LLC d/b/a HOOPLA

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-08805-JD

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, a copy of the foregoing was served by ECF to counsel of record.

*/s/ Vincent M. Rizzo*

12