Vincent M. Rizzo - #6313833
Todd P. Stelter - *admitted pro hac vice*
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone No.: 312-704-3000
Fax No. 312-704-3001
vrizzo@hinshawlaw.com
tstelter@hinshawlaw.com

Attorneys for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SMITH and LYLY TRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDWEST TAPE, LLC d/b/a HOOPLA,<br><br>Defendant. | Case No. 3:24-cv-08805-JD<br><br>**DEFENDANT MIDWEST TAPE, LLC D/B/A HOOPLA'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AS TO TRAN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 14, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Complaint Filed: December 6, 2024<br>Am. Complaint Filed: March 18, 2025<br>Trial Date: December 14, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on August 14, 2025 at 10 a.m., or as soon thereafter as counsel may be heard in Courtroom 11 of the above-captioned Court, located at 450 Golden Gate 4 Avenue, San Francisco, CA 94102, defendant Midwest Tape, LLC d/b/a Hoopla will and hereby does move this Court for an order to compel arbitration as to Lyly Tran.

This motion is brought pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA") on the grounds that plaintiff Lyly Tran's claims against defendant are subject to a binding mandatory arbitration provision and class action waiver because plaintiff affirmatively agreed to defendant's Terms and Conditions of Use and

continued to visit and use defendant's website and services. Every cause of action in the instant lawsuit falls within the scope of the arbitration provision.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Christopher Merritt in Support of Defendant's Motion to Compel Arbitration as to Lyly Tran and accompanying Exhibits filed concurrently herewith, and any oral argument permitted by the Court.

Dated: June 18, 2025

HINSHAW & CULBERTSON LLP

By: */s/Vincent M. Rizzo*
Vincent M. Rizzo
Attorney for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

# TABLE OF CONTENTS


| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| **I.** INTRODUCTION | 1 |
| **II.** STATEMENT OF FACTS AND ACCOUNT HISTORY | 2 |
| **A.** Tran's Use of the hoopla Website. | 2 |
| **B.** The Arbitration Provision. | 5 |
| **III.** ARGUMENT | 6 |
| **A.** The FAA Governs the Arbitration Agreement. | 6 |
| **B.** A Valid and Enforceable Agreement to Arbitrate Exists | 9 |
| **C.** Tran's Claims Fall Within the Scope of the Arbitration Provision. | 13 |
| **D.** The Court Should Enforce the Parties' Agreement to Delegate Questions of Arbitrability to the Arbitrator. | 14 |
| **IV.** CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Cases**


*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265, 277 (1995) .......... 6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 346 (2011) .......... 8

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643, 650 (1986) .......... 13, 14

*Brennan v. Opus Bank*,
796 F.3d 1125, 1130 (9th Cir. 2015) .......... 14, 15

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440, 443 (2006) .......... 8

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52, 56, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) .......... 6

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213, 218 (1985) .......... 8

*Duval v. Costco Wholesale Corp.*,
2023 U.S. Dist. LEXIS 97688, *4-5 (N.D. Cal. June 5, 2023) .......... 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 944 (1995) .......... 9

*Fli-lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190, 1199 (9th Cir. 2024) .......... 15

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79, 91-92 (2000) .......... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524, 529 (2019) .......... 8, 15

*Hofer v. Emley*,
2019 U.S. Dist. LEXIS 161377 (N.D. Cal. Sept. 20, 2019) .......... 6

*In re Facebook Biometric Info.* Priv. Litig.,
185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) .......... 13

*Kasper v. NFHS Network, LLC*,
2024 U.S. Dist. LEXIS 211406, *2 (N.D. Cal. 2024) .......... 10, 11, 12, 14, 15

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907, 909 (7th Cir. 1999) .......... 13

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559, 565–66 (9th Cir. 2014) .......... 9

*Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc.*,
473 U.S. 614, 621-22 n.8 (1985) ..... 12, 13

*Mortenson v. Bresnan Commc'ns, LLC*,
722 F.3d 1151, 1157 (9th Cir. 2013) ..... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24 (1983) ..... 8

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
724 24 F.3d 1069, 1074 (9th Cir. 2013) ..... 15

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) ..... 9

*Peterson v. Lyft, Inc.*,
2018 U.S. Dist. LEXIS 197164, *6 (N.D. Cal. Nov. 19, 2018) ..... 12

*Rent-A-Cntr, W., Inc. v. Jackson*,
561 U.S. 63, 68-69 (2010) ..... 14, 15

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) ..... 7

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220, 226 (1987) ..... 9

*Solar Planet Profit Corp. v. Hymer*,
2002 U.S. Dist. LEXIS 20148, *7 (N.D. Cal. 2002) ..... 7

*Stansberry v. Raising Cane's United States LLC*,
2022 U.S. Dist. LEXIS 232291, *6 (S.D. Ohio 2022) ..... 9

*Tompkins v. 23andMe, Inc.*,
2014 U.S. Dist. LEXIS 88068, *29-33 (N.D. Cal. June 25, 2014),
aff'd, 840 F.3d 1016 (9th Cir. 2016) ..... 12

*United States v. Sutcliffe*,
505 F.3d 944, 953 (9th Cir. 2007) ..... 6

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574, 582-83 (1960) ..... 13, 14

*West v. Uber Techs.*,
2018 U.S. Dist. LEXIS 233550, *10-11 (C.D. Cal. Sept. 5, 2018) ..... 13

**Statutes**

9 United States Code Section 2 ..... 6

9 United States Code Section 4 ..... 1, 8

Civil Code Section 1799.3 ..... 1

Penal Code Section 631 ..... 1

Penal Code Section 632 .......................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant filed a motion to compel arbitration as to plaintiff Kevin Smith on March 3, 2025. ECF No. 26. That motion remains fully briefed on the docket and is awaiting a ruling from the Court. *See* ECF Nos. 26, 35 & 38.

On March 18, 2025, plaintiffs filed an amended complaint purporting to add an additional plaintiff, Lyly Tran, ("Tran"), to this case. ECF No. 33. Therefore, defendant now files this second motion to compel arbitration, requesting that this Court also compel arbitration as to Tran for the same reasons defendant is concurrently requesting this Court compel arbitration as to plaintiff Kevin Smith.

Plaintiffs' amended complaint alleges that defendant violated the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632 ("CIPA"), and California Civil Code § 1799.3, as well as committed an invasion of privacy under California's Constitution, ECF No. 33, Counts I-IV, when Tran created an account on defendant's website and used it to check out reading and video materials starting in 2020. ECF No. 33 ¶¶ 17-18.

Tran, however, cannot maintain litigation in this forum because Tran's use of the website was governed by Terms and Conditions of Use which contained an arbitration provision and a class action waiver that compel Tran to individually arbitrate any claims related to Tran's use of the website. Tran's alleged claims are exactly the type of claims encompassed by the arbitration provision because they relate to her alleged use of the website. Specifically, Tran alleges that defendant violated the law by intercepting plaintiff's communications with the website. ECF No. 33 ¶ 18.

As explained further below, defendant is entitled to compel arbitration under the terms of the arbitration provision under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA").

## II. STATEMENT OF FACTS AND ACCOUNT HISTORY

### A. Tran's Use of the hoopla Website.

Tran alleges that she used defendant's website, https://www.hoopladigital.com ("hoopla Website") to check out reading and video materials starting in 2020. ECF No. 33 ¶ 17. Tran alleges that she regularly accessed the hoopla Website to search for and borrow reading and video materials through her account ("Tran's Account") using a mobile application. ECF No. 33 ¶ 17. Tran alleges that when she used the hoopla Website to search for or obtain books and audio books, defendant unlawfully intercepted her communications with the hoopla Website. ECF No. 33 ¶ 18.

Tran's Account and her use of the hoopla Website were and are governed by Terms and Conditions of Use ("TOU") which contain an arbitration provision ("Arbitration Provision") and a class action waiver ("Class Action Waiver"). *See* Declaration of Christopher Merritt in Support of Defendant's Motion to Compel Arbitration as to Lyly Tran, ("Merritt Tran Decl."), attached hereto as Exhibit A.

To access any Content, users must register and agree to the then-current TOU as part of the registration process. Merritt Tran Decl. ¶ 9. The records associated with Tran's Account establish she first registered for the hoopla service on April 27, 2019 via the hoopla Android App. Merritt Tran Decl. ¶¶ 7, 13. Specifically, as part of the registration process, Tran was presented with the following:




Merritt Tran Decl. ¶ 10.

Here, the hoopla Android App prompted Tran to enter and confirm an email address and password. Merritt Tran Decl. ¶ 11. The page further noted that "By clicking Next, you are agreeing to our terms and conditions and our privacy policy," with a link to each. *Id*. If Tran wanted to continue with the registration process, she had to affirmatively click on the button indicating her acceptance of defendant's TOU and privacy policy. Merritt Tran Decl. ¶¶ 11, 13. Defendant's records reflect that Tran engaged in the process set forth above and affirmatively indicated that she agreed to defendant's then-applicable TOU on April 27, 2019. Merritt Tran Decl. ¶¶ 13, 15 and Ex. 2.

Defendant updated its TOU in August of 2021, meaning that the first time Tran attempted to access the hoopla Android App or the hoopla Website after that date, she was presented with a full copy defendant's 2021 Terms. Merritt Tran Decl. ¶¶ 12, 14 and Ex. 1. The first time the Tran Account accessed the hoopla Android App or the hoopla Website after this update was on November 3, 2021. Merritt Tran Decl. ¶¶ 8, 12, 14 and Exs. 1 and 2. Therefore, Tran was presented with an updated version of the TOU in November of 2021. *Id.* At that time, Tran was presented with a pop-up window containing a full copy of the 2021 TOU as shown below. *Id.*




The data associated with Tran's Account confirms that Tran affirmatively clicked on a box indicating that she accepted the 2021 TOU. Merritt Tran Decl. ¶¶ 12, 14 and Exs. 1 and 2. If Tran had failed to accept the updated terms, she would have been unable to log on to the hoopla Android App, the hoopla Website, or access Content. Merritt Tran Decl. ¶ 12.

**B. The Arbitration Provision.**

The 2021 TOU included an Arbitration Provision that broadly permits defendant to elect mandatory arbitration of "any claims relating to the Platform, software for or associated with the Platform, and/or Content." Merritt Tran Decl. at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION." "Platform" is defined in the 2021 TOU as "all HOOPLA websites, applications, and associated services and properties (including this website, our HOOPLA applications for mobile and streaming devices, and related services and properties)." Merritt Tran Decl. at Ex. 1 at section "I. INTRODUCTION." "Content" is defined in the 2021 TOU as "any ebooks, audio books, images, video, music, text, or other content … available through the Platform." *Id*.

The Arbitration Provision expressly states:

> You agree to resolve any claims relating to the Platform, software for or associated with the Platform, and/or Content through final and binding arbitration before a single arbitrator in Lucas County, Ohio, USA. The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. Any in-person arbitration proceedings shall occur in Lucas County, Ohio, unless the arbitrator determines that another, mutually convenient arbitration forum is required by applicable law. By accessing the Platform you agree to submit to the jurisdiction of the State of Ohio and agree that Lucas County, Ohio shall serve as the exclusive venue for any disputes relating to the Platform, software for or associated with the Platform, and/or Content.
>
> Merritt Tran Decl. at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

The Class Action Waiver expressly states:

> You may only resolve disputes with [defendant] on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations are not allowed.
>
> Merritt Tran Decl. at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

## III. ARGUMENT

### A. The FAA Governs the Arbitration Agreement.

The FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

The FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause," and "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually in commerce—that is, within the flow of interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (cleaned up). "[A]pplication of the FAA" *is not* "defeated because the individual . . . transactions, taken alone, did not have a substantial effect on interstate commerce." *Alafabco*, 539 U.S. at 56 (internal quotation marks omitted). With respect to the FAA, "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." Id. at 56-57 (cleaned up). The Ninth Circuit recognizes "that as both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (cleaned up).

Therefore, courts regularly find that the FAA applies where, as here, an agreement involves communications on the Internet. *See e.g. Duval v. Costco Wholesale Corp.,* 2023 U.S. Dist. LEXIS 97688, *4-5 (N.D. Cal. June 5, 2023) citing *Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *Hofer v. Emley*, 2019 U.S. Dist. LEXIS 161377 (N.D. Cal. Sept. 20, 2019) (finding agreement affected interstate commerce and the FAA applied because plaintiff had to access the Internet using his smartphone in

order to engage with the company); and *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) (finding that contract affected interstate commerce because it related to company's services and use of those services "require[d] use of the Internet, the Agreement would involve interstate commerce.").

Plaintiffs' amended complaint here clearly alleges interstate use of the Internet to enter into what is essentially a licensing transaction paid for by the Los Angeles Public Library as a result of Tran having an account there. *See* ECF 33 ¶ 17. Under the TOU that Tran entered into, defendant grants users limited licenses to the content they borrow. The licenses involve borrowing content (from anywhere) via the Internet. The licensing agreement is certainly not limited to California and such restraints therefore are commonly held to have direct nexus to interstate commerce. *See, e.g. Solar Planet Profit Corp. v. Hymer*, 2002 U.S. Dist. LEXIS 20148, *7 (N.D. Cal. 2002) (licensing agreements that restrain have a direct nexus to interstate commerce, and regulation of such agreements fall within Congress's interstate commerce power).

The amended complaint alleges that defendant is "incorporated in Ohio and has its principal place of business in Holland, Ohio." ECF No. 33 ¶ 26. In the same paragraph, plaintiffs allege that defendant "owns and operates the digital library rental catalog and the digital distribution service that partners with libraries nationwide, found at hoopladigital.com (the 'Website')." *Id.* Later, plaintiffs allege that "Hoopla Digital 'partners with libraries around the United States to allow an account holder to '[i]nstantly borrow digital movies, music, ebooks, and more 24/7 with [their] library card.'" ECF No. 33 ¶ 44. Plaintiffs allege that "[d]efendant owns and operates the Website, which provides the Hoopla Service and distributes digital reading and video materials to account holders across the entire United States." ECF No. 33 ¶ 46. Plaintiffs' allege that they accessed the Website while they were in California (rather than Ohio). ECF No. 33 ¶ 51.

Continuing on, plaintiffs' amended complaint notes that "[a]s of 2022, Hoopla Digital had partnered with more than 8,500 public libraries across the U.S., Canada,

Australia and New Zealand. ECF No. 33 ¶ 47. Plaintiffs' amended complaint concludes by alleging that defendant "is a 'person providing video recording sales … services' because it sells access to its online [sic], which hosts and delivers thousands of videos on the Hoopla Service platform." ECF No. 33 ¶ 159. Therefore, plaintiffs' amended complaint clearly alleges usage of the Internet as an instrumentality and channel of interstate commerce .

Further, the Supreme Court has routinely recognized that the FAA embodies a "national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (holding that the FAA reflects both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract"). Therefore "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement[.]" *Concepcion*, 563 U.S. at 344. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Under the FAA, arbitration must be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists and (2) the claims at issue fall within the scope

of that agreement. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987).

Therefore, Tran here should be compelled to arbitrate her claims because a valid and enforceable agreement to arbitrate exists and her claims fall within the scope of the Arbitration Provision.

**B. A Valid and Enforceable Agreement to Arbitrate Exists.**

The Court must look to ordinary contract principles in determining whether a an agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts."). A party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020).

Here, Tran alleges that she is a California citizen, ECF No. 33 ¶ 16, while defendant is alleged to be incorporated in Ohio with its principal place of business in Ohio. ECF No. 33 ¶ 26. Tran was able to register for and access Content by virtue of her holding an account with a participating library. ECF No. 33 ¶ 17. Defendant's TOU reference "the laws of the United States of America and the State of Ohio notwithstanding any principles of conflicts of law." Merritt Tran Decl. at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

Under Ohio law, the crucial inquiry is whether there was a manifestation of assent to the TOU. *See Stansberry v. Raising Cane's United States LLC*, 2022 U.S. Dist. LEXIS 232291, *6 (S.D. Ohio 2022). Assent requires notice of the terms and some outward or objective indication of assent. *Stansberry* at *6 (applying Ohio law). California law is in accord with Ohio on both issues. See *Peter,* 445 F. Supp. 3d at 585 (manifestation of assent) and *Knutson v. Sirius XM Radio Inc.,* 771 F.3d 559, 565–66 (9th Cir. 2014) (applying California law regarding the outward or objection indication of assent).

As it specifically relates to Tran's acceptance of defendant's TOU, if defendant here demonstrates that "it provided 'reasonably conspicuous notice of' its … TOU, and that [plaintiff] '[took] some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his … assert to those terms,'" then defendant will have carried its burden. *See Kasper v. NFHS Network, LLC*, 2024 U.S. Dist. LEXIS 211406, *2 (N.D. Cal. 2024).

Here, defendant has met this burden. The evidence is overwhelming that Tran affirmatively manifested assent to defendant's TOU and continued to visit and access Content and associated services afterward. *See* Statement of Facts and Account History *above* Section II. As previously indicated, defendant updated its TOU in August of 2021, meaning that the first time Tran attempted to access Content after that date, she was presented with a full copy defendant's 2021 Terms. Merritt Tran Decl. ¶¶ 12, 14 and Ex. 1. The first time the Tran Account accessed the hoopla Android App or the hoopla Website after this update was on November 3, 2021. Merritt Tran Decl. ¶¶ 8, 12, 14 and Exs. 1 and 2. Therefore, Tran was presented with an updated version of the TOU in November of 2021. *Id*. At that time, Tran accessed the hoopla Android App and was again presented with a pop-up window containing a full copy of the 2021 TOU as shown below. *Id*.




The data associated with Tran's Account confirms that Tran affirmatively clicked on a box indicating that she accepted the 2021 TOU. Merritt Tran Decl. ¶¶ 12, 14 and Exs. 1 and 2. If Tran had failed to accept the updated terms, she would have been unable to log on to the hoopla Android App, the hoopla Website, or access Content. Merritt Tran Decl. ¶ 12. Therefore, an agreement exists, and the 2021 TOU apply to the relationship between defendant and Tran.

In *Kasper*, this Court, in a nearly identical situation, recently granted a defendant's motion to compel arbitration. *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *6-7. Same as here, when the plaintiff in *Kasper* first signed up for his free account on defendant's website, he was required to click on a box that stated, "I accept the Terms and Conditions," where the phrase "Terms and Conditions" was hyperlinked to the TOU. *Kasper* at *2. There is no relevant differentiation between the facts here and the

facts in *Kasper* as it relates to the existence of an arbitration agreement. This Court in *Kasper* held that an arbitration agreement existed. *Id*.

Further, arbitration agreements are presumed to be valid and enforceable. *See Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc*., 473 U.S. 614, 621-22 n.8 (1985). As "arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortenson v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1157 (9th Cir. 2013). The party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or that the claims at issue do not fall within the purview of the arbitration agreement. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

Here, Tran's own allegations confirm that she "used" and "regularly accessed" the hoopla service to search for and borrow reading and video materials through her account. ECF No. 33 ¶ 17. This use and access was only possible after Tran affirmatively clicked on a box indicating acceptance as to the TOU. Merritt Tran Decl. ¶¶ 12, 14 and Exs. 1 and 2. If Tran had failed to accept the updated terms, she would have been unable to log on to the hoopla Android App, the hoopla Website, or access Content. Merritt Tran Decl. ¶ 12.

Therefore, there is nothing invalid or unenforceable about the Arbitration Provision in this case. Courts routinely enforce agreements formed under such circumstances, given the clear, conspicuous notice to the user of both the existence of the terms and the fact that clicking a button to indicate acceptance and/or continuing to use the service would unambiguously manifest assent. *See e.g., Kasper*, 2024 U.S. Dist. LEXIS 211406 at *2; *Peterson v. Lyft, Inc*., 2018 U.S. Dist. LEXIS 197164, *6 (N.D. Cal. Nov. 19, 2018) (finding that the arbitration agreement is valid and enforceable where a plaintiff's "clicking of the 'I accept' button rendered *Lyft's* Terms of Service a binding contract"); *Tompkins v. 23andMe, Inc.,* 2014 U.S. Dist. LEXIS 88068, *29-33 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th Cir. 2016) (holding a contract has been formed when plaintiff "clicked a box or button that appeared near a hyperlink to

the [contract] to indicate acceptance of the [contract]"); *West v. Uber Techs.,* 2018 U.S. Dist. LEXIS 233550, *10-11 (C.D. Cal. Sept. 5, 2018) ("A reasonably prudent smartphone user would understand that the Terms were connected to the creation of a user account when notice of the Terms of Service is provided simultaneously to enrollment").

Moreover, courts will enforce updates to terms of use when notice of the updates is provided to the user and the user thereafter continues to use the service. *See e.g. In re Facebook Biometric Info.* Priv. Litig., 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) ("[I]ndividualized notice in combination with a user's continued use is enough for notice and assent.").

**C. Tran's Claims Fall Within the Scope of the Arbitration Provision.**

Once it is determined that parties have entered into a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986). Similarly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp*., 473 U.S. at 626; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc*., 174 F.3d 907, 909 (7th Cir. 1999) ("a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582-83 (1960)). Arbitration clauses with "relating to" language are broad and "necessarily create a presumption of arbitrability." *Kiefer*, 174 F.3d at 910.

Here, the Arbitration Provision broadly covers, "any claims relating to the Platform, software for or associated with the Platform, and/or Content." Merritt Tran Decl. at Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION." The plain language of these broad contractual terms certainly encompass plaintiff's claims, all of

which are premised upon use of the hoopla Website. ECF No. 33 ¶ 18. As Tran's claims fall squarely within the category of claims that relate to her use of the hoopla Website, they must be arbitrated.

Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech*., 475 U.S. at 650 (*quoting United Steelworkers of Am*., 363 U.S. at 582-83).

Again, in *Kasper*, this Court, in a nearly identical situation, recently granted a defendant's motion to compel arbitration. *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *6-7. The TOU in *Kasper* contained an arbitration clause in which the parties agreed to submit "any controversy or claim arising out of relating to this agreement, the Service, or any alleged breach of this agreement, or any other controversy or claim between the parties, solely and exclusively to arbitration administered by the American Arbitration Association ('AAA') in accordance with its Commercial Arbitration Rules." *Kasper* at *2. This Court granted defendant's motion to compel arbitration because plaintiff's claims obviously fell within the scope of the arbitration provision. *Id*.

Accordingly, Tran's claims here fall squarely within the scope of the Arbitration Provision and plaintiff should be compelled to arbitrate her claims.

### D. The Court Should Enforce the Parties' Agreement to Delegate Questions of Arbitrability to the Arbitrator.

Finally, this Court should also follow *Kasper* and hold that "incorporation of the AAA rules constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability" here. *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *5, citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of arbitrability." *Rent-A-Cntr, W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking

arbitration" can enforce. (*Id.* at 70.) Once the court finds that the parties delegated arbitrability determinations to the arbitrator, it has "no power" to override that agreement, even if the party opposing arbitration claims the movant's arbitration rights are "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 68–69 (2019).

The TOU here incorporates AAA rules. It expressly states:

> The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes.
>
> Merritt Tran Decl. Ex. 1 at section "XII. GOVERNING LAW AND JURISDICTION."

Arbitration clauses may delegate to the arbitrator, for determination in the arbitration, certain threshold issues about the agreement. *Fli-lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024). As this Court noted in *Kasper*, the Ninth Circuit in *Brennan* held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate" arbitrability. *Kasper*, 2024 U.S. Dist. LEXIS 211406 at *5-6.

Therefore, the Arbitration Provision here, by incorporating AAA arbitration rules, indicates that the parties have agreed to arbitrate gateway questions of arbitrability. The Ninth Circuit, like "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp., A.G.,* 724 24 F.3d 1069, 1074 (9th Cir. 2013).

## IV. CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its Motion to Compel Arbitration as to Tran and exercise its discretion to refer these proceedings to arbitration.

Dated: June 18, 2025

HINSHAW & CULBERTSON LLP

By: */s/Vincent M. Rizzo*
Vincent M. Rizzo
Attorney for Defendant
MIDWEST TAPE, LLC d/b/a HOOPLA

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2025, a copy of the foregoing was served by ECF to counsel of record.

*/s/ Vincent M. Rizzo*